STATE OF SOUTH DAKOTA, Appellant, v. McPHERSON et al., Respondents.

(139 N. W. 368.)

1.  **Criminal Law—Statutes—Title to—One Subject—Banking Laws —"Control of Banks"—"Regulate"—New Legislation—Revision.**

   Laws 1909, ch. 222, entitled "An act to revise the laws authorizing the business of banking, providing for the organization and control of banks, and to establish a banking department for the supervision of such business," which, by sections 29 and 30, makes it an offense for bank officers and directors to permit shareholders to become indebted to it at one time in excess of 50 per cent. of its paid-up capital, does not conflict with Const., Art. 3, Sec. 21, concerning the title to laws; since to "control" has the same sense as "regulate," and since the "control of banks" means the control of the banking business, indicates new legislation, and means to check or restrain; and hence the objections that the title embraces more than one subject, and that the act is merely revisory of old legislation are untenable.  The penal provisions therein constitute a method of control of the banking business; and the provisions of the act appropriately cover and are within the scope and meaning of the title wherein it provides for "organization and control of banks."

2.  **Criminal Law—Indictment—Duplicity—Joinder of Offenses.**

   An indictment under Laws 1909, ch. 222, Secs. 29, 30, which alleges, substantially in the language of the statute, that defendants, as directors and officers of a bank, knowingly and unlawfully permitted shareholders, including themselves, on a day stated, to become indebted to it in excess of fifty per cent. of its paid-up capital, each separate loan being separately stated, and that the whole amount so taken out was at one

time, shows that the transaction was inseparable and the joint act of all, and that the wrongful act of all was the wrongful act of each, and was not objectionable for duplicity in charging more than one offense; since it is not necessary to charge and expressly allege an act to be the joint act of a number of defendants, or to allege that they acted in concert by use of the words "joint" and "concerted," where the facts and circumstances alleged show the act to have been the joint act of all defendants.

3. **Banks and Banking—Indictment—Officers and Directors—Criminal Offenses.**

An indictment framed under Laws 1909, ch. 222, Secs. 29, 30, substantially in the language of the statute, alleging that defendants as officers and directors of a bank, knowingly and willfully permitted shareholders, including themselves, to become indebted to it at one time in excess of fifty per cent. of its paid-up capital, sufficiently charges a public offense.

4. **Same—Indictment—Form and Requisites—Certainty and Particularity.**

Such indictment substantially conforms to the requirements of the Code Crim. Proc., in that it contains a statement of the acts constituting said offense substantially in the language of the statute, and which is in such ordinary and concise language as to enable a person of common understanding to know what is intended thereby.

(Opinion filed January 6, 1913.)

Appeal from Circuit Court, Meade County. Hon. WILLIAM G. RICE, Judge.

The defendants Donald A. McPherson, Frank M. Stewart, and others were indicted for a violation of Secs. 29 and 30, Chap. 222, Laws 1909, concerning banks and banking. From an order sustaining the separate demurrer of defendant Frank M. Stewart and discharging him, the State appeals. Reversed and remanded.

*Royal C. Johnson*, Attorney General, *Claude C. Gray*, State's Attorney, and *Hayes & Heffron*, for the State.

Chapter 222 of the Session Laws of 1909 embraces but one subject, which is clearly expressed in the title.

The provision of the Constitution of the state of South Dakota which is alleged to have been violated by sections twenty-nine and thirty of chapter 222 of the Session Laws of 1909, is as follows:.

"No law shall embrace more than one subject, which shall be expressed in its title." People v. Mahaney, 13 Mich., 494.

Judge Gardner of New York in relation to this provision says: "The purpose was, that neither the members of the legislature nor the public, should be misled by the title." Insurance Company v. Mayer, 8 N. Y., 241; State v. Morgan, 2 S. D., 42; State v. Becker, 3 S. D. 29; Durker v. City of Janesville, 26 Wis. 697.

Judge Cooley in his excellent work on Constitutional Limitation in the 5th Edition page 173, Cooley Const. Lim. 5th. Edition; State v. Morgan, Supra; People v. Lawrence, 41 N. Y., 139; De-Witt v. San Francisco, 2 Cal. 289.

"The title was never intended to be an index of the law." Johnson v. Harrison, 47 Minn., 575.

"The courts in all states where like or similar provisions exist have given liberal interpretation and have endeavored to construe it so as not to limit or cripple legislative enactments, any further than what was absolutely necessary by the absolute requirements of the law." State v. Miller, 45 Mo. 597; State v. Morgan, 2 S. D., 42.

There can be but little doubt as to the general subject of chapter 222, Laws 1909, or of the general character of business in the mind of the legislator at the time that he voted for said act to become a law. It will hardly be contended, but what the general purpose, object and subject of the act relates to the establishment and control of the business of banking in the state of South Dakota. The first article relates to the establishment and control of an office or officer, whose powers and duties are therein defined and which require strict and reasonable discipline over the various banks under the provisions of the act. The second article under the same title, fits into the same general subject of organization and control of banking. It provides for the organization and control of banks and lays down the legal requirements with reference to the State banks of South Dakota and provides penalties for the purpose of aiding in the carrying out of the provisions of the act. The penalties all relate to a violation of some germane provision or requirement established in the act for the general business of banking and the penalties are therein placed to serve as a means to an end, that is to say, to bring about the successful accomplishment of the real purposes of the law. The act is comprehensive in its nature and has attached thereto a repealing clause, which carefully guards against conflicts with prior

law.   All former banking laws in conflict with this law were repealed by express terms.   This we are irresistibly led to the conclusion, that it must have been the intention of the legislature at the time of the enactment of this law to bring together in one · broad and comprehensive act all laws relating to state banking in so far, at least, as was within the power of the legislative assembly. Under this act, for the first time in South Dakota, restraint was effectively placed upon the business of banking, and a check established by law, which had for its purpose the prevention of unlawful banking.   Its terms sought to prevent dishonest banking and to punish unlawful bankers, with such penalties as was deemed necessary for the successful enforcement of the provisions of the act.   A study of the act clearly shows that but one general subject is expressed in the law and that subject may fairly be said to be the organization and control of banks in South Dakota. It cannot be successfully said that the provisions of said statutes relating to excessive loans or the punishment for the violation of the same are not germane provisions in a general banking act such as ours.   Penal provisions are incident to the subject and furnish but a means to an end, which end was the ultimate object sought to be reached by the law makers when the very law itself was brought into being and placed upon the statute books of this state.   Morrow v. Wipf, S. D., 115, N. W. 1124.

An act no matter how comprehensive would be valid provided a single main purpose was held in view and no thing embraced in the act except what was naturally connected with and incidental to that purpose.   Van Horn v. State, 46 Neb. 62.

We also cite: State v. Page, 12 Nebr. 386; Bonorden v. Krig, 12 Neb. 121; Pioneer Irrigation Dist. v. Bradley, 8 Ida. 310; State of North Dakota v. Woodmanse, (North Dakota) 46 N. W. 971; People v. Parks, 58 Cal. 635; Davis v. State, 61 A. D. 331; Fahey v. State, 27 Tex. App. 146; Oleary v. Cook, 28 Ill. 538.

Sections twenty-nine and thirty, germane to the subject and properly included therein.

After considering the object, purpose and subject of chapter 222 of the Session Laws of 1909, we have the inquiry presented as to whether the subject of the foregoing act is clearly expressed in the title, so plainly therein recited as to prevent the title of

the act from being misleading either to the legislature or to the public.

Appellant contends that there is but one subject included within the act, and that that subject may fairly be said to be "An act providing for the organization and control of banks," and that said subject is expressed in the title in so many words, and that the aforesaid sections are germane to that subject and necessary to effectuate the accomplishment of the purposes of the law.

When the title of the act contains the words "Providing for the organization and control of banks," can it be honestly contended that the legislature did not intend to have within the act all provisions necessary to make that control complete. It will undoubtedly be contended by respondent, that the act does not provide for a regulation of the banking business, inasmuch as the word, "regulate," no where appears in the title. In answer to that contention, it may be said that the word control has a broader signification than the word regulate. A person may be authorized to regulate a business, but that in itself would not authorize that same person to control that business. On the other hand, if a person was authoribed to control a business in the broad signification of the term, that same person would undoubtedly be authorized to govern said business.

The legislature evidently felt, that in order to effectually carry into force the rules for the government of a bank which it had established, it was necessary to establish penal provisions. It is as necessary for respondent to limit the word control as it is for appellant to urge its broadest signification. We contend, that in placing in the title the words, "Control of Banks" the legislature clearly had in view, the placing of a title over the law, which would include within it all the provisions of the act in question.

Webster in his dictionary defines the word control and gives the synonym as being direction. Among other definitions for the word are found the following: "to check," "to restrain," "to govern," "to overpower," "to subject to authority," "to have under command." Webster Unabridged Dictionary.

This provision was taken in part from section 5200 of the National Banking acts, contained in the Revised Statutes of the United States. There was added to the statute a penalty for the

violation of the provisions for the purpose of insuring the obeyance of the law.

Under the federal statute no criminal penalty is provided. The framers of the banking act for South Dakota undoubtedly secured the foundation for section twenty-nine (29) from the foregoing federal provision. While no penalty was provided in the federal law yet a violation of its provisions furnished a legal remedy to the persons aggreved thereby under a general banking provision of the federal banking law. Second National Bank v. Burt, 93 N. Y., 244.

Our constitution is satisfied if the constituent means embraced in the body of the act have a proper relation to each other, and to the subject expressed in the title, and are consistent, intending to carry forward and to accomplish the general purpose indicated by the title and intended by the legislature.

The following cases sustain appellant's position that sections twenty-nine and thirty are germane to the act in question: State v. Morgan, 2 S. D., 42; Indianapolis v. Heuegle, 115 Ind., 581; 18 N. E., 172; Benson v. Chriatianson, 129, Ind., 539, 29 N. E., 26; Lewis v. State, 148 Ind., 346; 47 N. E., 675; Ex party Yung Jon, 28 Fed., 308; State v. Koshland, 25 Ore. 178, 35 P., 32; State v. Bernheim, 19 Mont., 512, 49 P. 441; Hartford Ins. Co. v. Raymond, 70 Mich., 485, 38 N. W., 474; People v. Miller, 88 Mich., 383, 50 N. W., 296; State v. Brachogel, 38 Minn., 265, 36 N. W., 641; State v. Stripling, 113 Alabama, 120, 36 L, R. A., 81, 21 So., 409; Plum Christy, 103, Ga. 686, 42 L. R. A., 841, 30 S. E. 759; Burns v. State, 104, Ga., 554, 30 S. E., 815; Brown v. State, 73 Ga. 38; State v. Stunkle, 41 Kans. 459, 21 P. 675; State v. Kerstendk, 49 La. Ann. 1621, 39 L. R. A., 520, 22 So. 845; Thompson v. Atkin, 81 Ill. App. 65; Leonard v. Tierman, 110 Ill. 173; Cohn v. People, 149 Ill., 491, 23 L. R. A., 821, 37 N. E., 60; Sykes v. People, 127 Ill., 117; 2 L. R. A., 461, 19 N. E., 705; People v. Blumont and Joe, 129 Ill., 370, 21 N. E. 923; Johnson v. Martin, 75 Tx., 40, 12 S. W., 321; Albrecht v State, 8 Tex. App. 216, 34 Am. Report, 737; Holton v. State, 28 Fla. 308, 9 So. 716; State v. Kingsley, 168 Mo., 135, 18 S. W. 994; State v. Whittaker, 160, Mo., 59, 60 S. W., 1068; State v. Woodmanse (N. D.) 46 N. W., 971.

Addition of penalty or remedy does not render a statute void for duplicity.

The principal ground upon which the lower court holds the act under discussion to be unconstitutional was that sections twenty-nine and thirty created a new felony with a penalty attached which was not provided for or embraced within the title of the act. This ruling of the lower court is an anomoly in South Dakota legislation. State v. Twining, 62 Atl. 402; State v. Morgan, 2 S. D., 45.

In that case this court cited the following authorities in support of its decision: Plank Road Company v. Hannaman, 22 Ind., 484; City of St. Louis v. Green, 7 Mo. App. 468; Canal Co. v. Bright, 8 Col., 144; English v. State, 7 Tx. App., 171; Insurance Co. v. Commissioners, 70, Mich., 485; Will v. State, 46 O. State, 450; Sykes v. People, 127, Ill., 177; State v. Stunkle, 41 Kans. 457; Turnpike Co. v. Fletcher, 104 Ind. 97; Canal Co. v. Bright, 8 Col. 144; People v. Goddard, 8 Col. 432; Fletcher v. State, 54 Ind., 462; O'Kane v. State, 69 Ind., 183; Brown v. State, 73 Ga., 242.

With our own Supreme Court passing directly upon this proposition, we feel, that the law, as far as this jurisdiction is concerned, is settled upon the general proposition, and does not make the addition of a penalty for the violation of the provision of the general act void, because the same is not expressed in the title. Not only has our own Supreme Court held this to be the law of South Dakota but the authoritiess are almost unanimous in holding it to be the law in almost all of the states of the union, or at least the great weight of the authorities so hold. Republic Iron & Steel Co. v. State of Indiana, 62 L. R. A. 141; Isenhour v. State, 62 N. E., 42; State v. Twining et al, 62 Atl., 402; 64 Atl., 1073; Thompson v. Atkin, 81 Ill., App., 62; State v. Woodmanse, (N. D.) 46 N. W. 971; People v. Blumont & Joe, 21st, N. E., 923; City of Indianapolis v. Heuegle, 18 N. E., 172; Sykes v. People, 19 N. E., 706; People v. Lonenthal, 93 Ill., 191; Magner v. People, 97 Ill., 320.

Judge Dillon, in discussing this provision of the constitution says: "This provision has been frequently construed to requre only the general or ultimate object to be stated in the title, and not the details by which the object is to be obtained. The

provision calculated to carry the declared object into effect is unobjectionable although no specifically indicated in the title." 1 Dillon, Municipal Cor. Sec. 28; Ex parte Abry., 5 Tex. App., 93; Cox v. State, 8 Tx., App. 254; Johnson v. Martin, 12 S. W. 321; Austin v. Ry. Co., 45 Texas 266-267; State v. Whittier, (Mo.) reported in 60 S. W., 1068; State v. Bochstreet, 136 Mo., 355; State v. Bronson, 115 Mo., 271; State v. Marrian, Co. Ct. 128, Mo. 427; State v. Bernheim, (Mont.) 49 P., 441; Cooley, Const. Lim. p. 172; Insurance Co. v. Raymond, 70 Mich., 485; Canal Co. v. Bright, 8 Col., 144; State v. Stunkle, 41 Kans., 456; Powell v. State, 71 Ga., 244; State v. Koshland, (Oreg.) 35 P. 32.

Provisions of our Constitution should be liberally construed.

In considering the constitutionality of statutes generally, it is a cardinal rule that nothing but a clear violation of the constitution will justify the court in overruling the legislative will. Every act is presumed to be constitutional, and every intendment is in favor of its validity. People v. Parks, 58 Cal. 635.

Statutes which are questioned as violating the constitutional provision under discussion are no exception to this rule. While such constitutional provisions were adopted for the purpose of remedying the evils referred to above, and should therefore be given such construction as would be necessary in making them effectual in accomplishing the object for which they were designed, still they should not be so construed as to restrict legislation to such an extent as to render different acts necessary, where the whole subject matter is connected, and may be properly embraced in the same act. This constitutional inhibition should receive, not a technical construction, but a reasonable one, and looking to the evils intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning. Cooley Const. Lim. 5th Ed., 176; State v. Kinsella, 14 Minn., 524; Shields v. Bennett, 8 W. Va., 85; Kurtz v. People, 33 Mich., 279; State v. Gut, 13 Minn., 341-349; Division of Howard Co., 15 Kans., 194-214; Shields v. Bennett, 8 W. Va., 74-86; Alleghaney County Homes Appeal, 77 Pa. St., 77-80; State v. Silver, 9 Nev. 227; Phillips v. Bridge Co., 2 Metc. (Ky.) 219-222; People v. Banks, 67 N. Y., 568-572; Ex parte Upshaw, 45 Ala. 234.

Notwithstanding the great interest in the result of this case may be to some persons, it is of much more interest to society, that the depositors in the Meade County Bank may be permitted to expect and receive from the laws of South Dakota the protection that was apparently given them against unlawful banking by the act now contended by respondent to be a dead letter as far as its penal provisions are concerned. This guarantee and protection will result, if a fair and reasonable construction is given to the act now under discussion.

Means to facilitate accomplishment or purpose of act are incidental to it and proper.

"A title fairly expressing the general subject covers provisions for all proper means and instrumentalities, which will or may facilitate the accomplishment or enforcement of the purpose expressed, such, for instance, as a provision prohibiting violation of the act, or prescribing a penalty or other punishment for such violations." 26 Ency. Law & Prac, (2nd. Ed.) p. 588; San Antonio v. Mehaffey, 96 U. S., 312; Skinner v. Garnet Gold Mfg. Co., 96 Fed. 735; Travelers Ins. Co. v. Oswego, 59 Fed. 58; Jackson v. State, (Ala.) 33 So. 888; State v. Jacksonville, Ter. Co. (Fla.) 41 Fla. 363; People v. Lovern, (Cal.) 119 Cal. 88; Duncombe v. Prindle, (Ia.) 12 Ia. 1; People v. Mehaney, 13 Mich. 481; People v. Coler, 173 N. Y. 103; State v. Woodmanse, 1 N. D. 246; State v. Haas, 2 N. D. 202; State v. Nomland (N. D.) 57 N. W. 86; People v. Stutphen, 166 N. Y. 163; People v. Lawrence, 41 N. Y. 137; State v. Steele, 39 Ore. 419; Osborn v. Corbett, 114 Mich. 645.

Penalties provided by statutes for the accomplishment of purposes of act are generally sustained by the courts. Morris v. State (Ga.) 43 S. E., 368; Plumb v. Christie, 103 Ga., 686; Cohn v. People, 141 Ill., 486; Thompson v. Akin, 81 Ill., App. 62; Republic Iron Company v. State, 66 N. E., Rep. 1005; People v. Huntley, 112 Mich. 569; State v. Power, 63 Neb. 496; State v. Deadwood Mills (N. J.) 53 Atl., 1125; State v. Carson, 67 N. J. L. 178.

*In Reply.*

Indictment number eight charges but one offense, simply charging all defendants jointly with violation of statute.

We think respondent has a clear misconception of the law relative to the responsibilities placed upon officers of a bank in South Dakota. See section 29, page 342, Laws 1909.

This law says, "Officers, directors, and employees, who knowingly permit or allow shareholders to at one time become indebted to a banking corporation in a total sum of fifty per cent of the paid up capital of said bank are guilty of a felony." Appelland in the indictment simply charges the officers of this bank with jointly violating this statute. The defendants are charged in the language of the statute with a violation of this law. What other offense is charged? Respondent has failed to show any other offense charged in indictment number eight. This statute enjoins upon the banker, the bank officer and the bank employe a duty. He must not permit or allow shareholders to violate this plain statute. He takes his chances if he knowingly does permit and allow a violation of this law. Appellant charges the defendants jointly with knowingly and feloniously, at the same time and place, violating this law. Was it necessary for the grand jury to file separate indictments against each defendant? If so, why? Has respondent told us? Clearly not. Can it be said that a joint commission of this crime is impossible? It is so charged. What other offense can be picked out of indictment number eight?

Appellant cites section 224 of Code of Criminal Procedure. This section says, that but one offense may be charged in an indictment. This section has been obeyed, and its terms clearly complied with by the state in the case at bar.

Respondent also finds comfort in 22 Cyc. at pages 373 and 374. This law is not disputed. Does not this authority of respondent support appellant's contention? The citation says, "The rule is well settled that several may be jointly indicted for offenses arising wholly out of the same act or omission." 22 Cyc. 373.

In the case of People v. Longe (2 Mich.) 23 N. W., 217, the court said: "In most cases there is no difficulty in convicting one or more persons charged jointly and acquitting others and there is no legal objection to trying each defendant separately by leave granted and possibly without. No one can be convicted without proof of individual guilt." We cite also: People v. Plyer, 121 Cal. 160.

Indictment number eight clearly states a public offense and clearly contains statement of acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended.

Respondent's search in indictment number eight for some hole having fallen flat an effort is made to "build a mountain out of a mole hill," in a hopeless twisting of the word "all", which appears in negativing the proviso;—"But the discount of bills of exchange, drawn in good faith, against actually existing values, and the discount of commercial paper, actually owned by the person negotiating the same, shall not be considered as money borrowed." Appellant recognized this proviso and negatived the same after describing the offense.

Thus it will be seen that the word "all" was used in the sense of referring to the whole of said indebtedness aforesaid and appellant clearly negatived the proviso in a manner which could have but one fair meaning. Where we use the word "all" in indictment number eight, followed by the words, "of which said indebtedness aforesaid,' * * * "was not," it can have but one meaning, that is to say, "all," or "the whole of," said indebtedness in question, "was not" then and there, discount of bills of exchange, etc., and when we say the whole of said indebtedness "was not," a certain thing, it follows as the night the day, that if the whole of it was not one thing, then it must have been something else. Webster defines the word "all" as follows: "The whole quantity of, as substance, duration, extent, amount, or degree; the whole number of, collectively, as individuals, particulars, or parts; every as with kind; any, used after a proposition or verb; pron. the whole; the whole quantity or amount; total; aggregate; n., a whole; an entirety; one's entire possessions, adv., wholly, entirely, completely."

Section 230 of the Code of Criminal Procedure; People v. Sponser, 1 Dak. 277; U. S. v. Beebe, 2 Dak. 303; State v. LaCroix, 8 S. D., 369.

Appellant feels that this indictment neither violates Section 221 of the Code of Criminal Procedure nor Section 7 of Article 6 of the Constitution. The defendant is clearly apprised of the nature and cause of the accusation against him and the objections made do not prejudice any substantial rights of the de-

fendant.    Respondent cannot honestly read the indictment and say it does not apprise him of the nature of the accusation against him.    No question but what it would sustain a plea in bar.    It was sufficiently definite and certain in the lower court to have been and would have been held sufficient had the court not held the law unconstitutional.    A court would have no hesitancy in passing judgment upon it.    Therefore, it is clearly sufficient under any fair rule of interpretation.    State v. Lewis, 13 S. D., 168; State v. Matejousky, (S. D.) 115 N. W., 909; United States v. Simmons, 96 U. S., 360; State v. Swenson, (S. D.) 99 N. W. 1115; State v. Faulk, (S. D.) 116 N. W., p. 172; State v. Johnson, 124 N. W., 853; Sections 239-240, Code of Criminal Procedure.

Chapter 222 of Session Laws of 1909 not limited to revision of former banking laws.

We understood respondent in the lower court to take the position, that the penal provisions in the act were not germane to the subject, because not expressed in the title, and appellant is gratified to learn from respondent's brief that, "respondent has no quarrel with the authorities which are cited by appellant," but respondent apparently relies upon the cases of Pierson v. County, 134 N. W., 217 (S. D.), Bekker v. R. R., 132, N. W., 800 (S. D.) and Kennedy v. Railway, 132, N. W., 802, (S. D.) to sustain the lower court.    Appellant is said to have missed the point in the foregoing cases.    We think, in this, that respondent is in error. Those cases have not, as appellant views the rules therein laid down, in any manner changed the rules contained in the decisions in State v. Morgan, 2 S. D., 32 and in State v. Bekker, 3 S. D., 29.    In fact, this court says, in the case principally relied upon by respondent: "The object and reason of this constitutional provision has been so fully considered by this court in its former opinions, that it will not be necessary to repeat them in this opinion."    (Referring to the Morgan and Bekker cases.)    Pierson c. County, 134 N. W., 217.

Respondent is clearly in error in relying on the three cases afore cited as they contain features which cause them to violate the constitutional inhibition.    In those cases no strained construction is necessary to show the titles fatally insufficient.    But in the case at bar, respondent would even read into the plain words and mean-

ing of the title something which on the face of the very law it-
self is proved inconsistent, and falls of its own weight.

Respondent seeks solace in attempting to limit the title of
chapter 222 of the Session Laws of 1909 to, "An act to revise the
laws" while respondent apparently claims to be serious in this con-
tention, yet in the very next breath he charges the legislature with
violating the constitutional inhibition by inserting in the law new
crimes, which were not in existence before the passage of the act in
question. Respondent says: "This act of 1909 does not purport to
create any new laws.; it is in terms a revision only of the old laws
relating to (1) the authorization of the business of banking; (2)
the organization and control of banks, and (3) the establishment
of a banking department." This dissection of the act by counsel
for respondent is not warranted by the facts or by the intention
of the lawmakers, who have created new laws under this act, and
the best test of the intention of the legislature is the acts perform-
ed. When new laws were created in this act, the legislature surely
did not consider the act one of revision only. The title of the
act must be construed as a whole, considering punctuation and
giving to its language its usual, ordinary and common interpre-
tation.

The word "revise," also has a meaning which respondent
overlooks. Webster defines "revise" as follows: "to .review and
amend."

In the case of Ellis v. Parsell, (Mich.) 58 N. W., 840, the
court in passing on the word "revise" says: "The very terms
"revise" and "consolidate" imply the intention to include in such
act entire control over the subject, and to exclude all prior en-
actments."

A law is revised or amended, not when it. is repealed, but
when it is in whole or in part, permitted to remain and something
is added to or taken from it, or it is in some way changed or al-
tered to make it more complete or perfect, or to fit it the better
to accomplish the object or purpose for which it was made, or
some other object or purpose. Falconer v. Robinson, 46 Ala. 340.

Respondent has endeavored to give to the word "control" a
special meaning, such as would limit the title of the act. But
respondent must not forget that the legislature under the word
"control" has passed the acts in question and appellant con-

tends, that the meaning given the word by the lawmakers is best seen by the very acts performed under the title involved in the case at bar.

If this law by any fair construction can stand the test, it should be in all things sustained. While appellant is equally as solicitous for the upholding of the constitution as is respondent, yet appellant is equally solicitous to prevent the use of the constitution as a safeguard to those who have flagrantly violated the sections herein involved. The whole argument of respondent in this case is technical and relates to form, rather than to substance, and appellant submits that the constitution was never intended to be so construed as to place technicalities on a higher plane than substantial justice.

*Buell, Gardner & Denu,* and *Martin & Mason,* for Respondent, Frank M. Stewart.

The indictment charges more than one offense. Code Crim. Proc., Sec. 224; State v. Mattison, (N. D.) 100 N. W. 1091; U. S. v. Dietrich, 126 Fed. 664; 22 Cyc. 373-374.

Indictment number eight seeks to charge all the defendants jointly with the alleged offense of knowingly permitting or allowing shareholders of the bank to become indebted in a total sum exceeding fifty per cent of its capital. It does not charge any conspiracy, nor does it charge any concert of action. The statute itself provides that "any officer, director or employee of any corporation transacting a banking business in this state who shall knowingly permit or allow shareholders of such bank to at any one time become indebted to such banking corporation in a total sum exceeding fifty per cent of the paid up capital of such banking corporation, shall be deemed guilty of a felony, etc." It will be observed that by this statute any officer who knowingly permits the creation of such an indebtedness is guilty. This guilt is not dependent upon any act or knowledge on the part of any other officer, but his guilt or innocence will be determined without any reference to the acts or knowledge of any other defendant. It is not the knowledge of the officers, directors or employees in their capacity as a board of directors that renders such officers guilty. It is the knowledge of such indivdual officer as an individual— separate and distinct knowledge of each one of the officers, directors or employees. The offense does not arise from the joint act

of the defendants, but it clearly arises, whether there be any joint permission or allowance or not. To render an officer amenable to this statute, there must be the particular act or omission of the individual officer, that is, a knowledge, permission or allowance on his part, absolutely unaffected by and regardless of the acts or knowledge of the other officers or employees. 22 Cyc., at pages 373 and 374; United States v. Dietrich, supra.

Indictment number eight does not state a public offense and does not contain a statement of the acts constituting the alleged offense in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended.

The statute upon which indictment number eight is based provides: "but the discount of bills of exchange drawn in good faith against actually existing value and the discount of commercial paper actually owned by the person negotiating the same shall not be considered as money borrowed." Chap. 222, Sec. 29, Laws 1909.

In order that the indictment might state an offense, it was necessary to negative this proviso, because it is an essential ingredient of the offense sought to be charged. If the alleged excessive loans consisted of the discount of bills of exchange or of commercial paper, there would, of course, be no offense. It is not criminal to permit shareholders to become indebted in a sum exceeding fifty per cent of the capital under any and all circumstances, but only under particular circumstances.

It is not necessary under the statute that the excessive loans shall consist entirely of discounted bills of exchange and commercial paper in order that they may not fall without its prohibition, but if such loans contain enough discounted paper to reduce their amount below fifty per cent of the bank's capital stock, then they are lawful, and the knowing permission or allowance thereof is not criminal.

The indictment does not state, and it is our contention that before the indictments states a public offense, it must show that either no part of the loans was discount of bills of exchange or of commercial paper, or that, after the deduction of such discounts, the loans were still excessive. Under the theory of the pleader, it

is clear that the whole amount of the loans must have consisted of discounted paper, in order that they might be lawful—a theory clearly untenable. Volume 22 Cyc. 344.

As it does not appear from any allegations in the indictment that the loans in question might not have been wholly innocent; that there was not included in their amount a sufficient quantity of discounted paper to bring them within the proviso, it seems to us that this indictment also offends against the rule requiring certainty. If a part of this alleged excessive indebtedness was discount of bills of exchange and commercial paper, as is necessarily implied from the allegations of the indictment, then we again inquire, how much? We submit that defendant is entitled to be advised.

In this regard, the indictment does not even follow the words of the statute, and it is uncertain and does not state all the material facts and circumstances embraced in the definition of the offense. In fact, can it be said that this indictment gives him any information whatever as to the amount of the alleged illegal loans?

It does not contain a statement of the acts constituting the alleged offense, and does violence to Section 7, Article 6, of the Constitution, and section 221, Code of Criminal Procedure. State v. Williams, 20 S. D. 492; State v. Bouchard, 4 S. D. 548.

Indictment number four charges more than one offense. State v. Mattison, (N. D.) 100 N. W. 1091; U. S. v. Dietrich, 126 Fed. 664; Code Crim. Proc., Sec. 224; State v. Smith, (N. D.) 52 N. W. 320; 22 Cyc. 373-374; State v. Wells, (Mo.) 35 S. W. 615; Wallace v. Lincoln Savg. Bank, (Tenn.) 15 S. W. 448 (24 A. S. R. 625.); State v. Warner, (Kans.) 55 Pac. 342; U. S. v. Cadwallader, 59 Fed. 677.

By indictment number four, the respondent with the other defendants is jointly indicted for the alleged offense of receiving deposits with knowledge that the bank was at the time insolvent. The statute under which this indictment is drawn provides "if any banker or any president, director, manager, cashier or other officer or agent, clerk or employee of any banker, bank or banking institution doing business in this state shall receive or assent to the reception of any deposit of money or other valuable thing by any such banker or in such bank or banking institution * * * after he shall have had knowledge of the fact that such banker, bank

or banking institution is insolvent, he shall upon conviction there-
of be punished," etc.   Sec. 45, Chap. 222, Laws 1909.

What we have said in paragraph two in relation to indict-
ment number eight is equally applicable to indictment number
four, and we wish here to urge it by reference rather than by
repetition.   Clearly, this statute creates a separate and distinct
offense on the part of the individual banker, president, director,
manager, cashier or other officer or agent, clerk or employee.   It
does not describe nor contemplate any concert of action, and if an
offense is charged against the defendants, it is a similar offense
charged against each defendant, and not one offense committed
by the defendants in common.

Indictment number four does not contain a statement of the
facts constituting the alleged offense in ordinary and concise lan-
guage and is bad for indefiniteness and uncertainty.   Sec. 7, Art.
6, S. D. Const.; Code Crim. Proc., Sec. 221; State v. Burchard, 4
S. D. 548; State v. Williams, 20 S. D. 492; State v. Shanley, 20
S. D. 18; State v. Carlisle, 22 S. D. 529; State v. Lonne, (N. D.)
107 N. W. 524; Batchelor v. U. S., 156 U. S. 426; U. S. v.
Carll, 105 U. S. 611; 22 Cyc., 340-341; Moline v. State, (Neb.)
93 N. W. 228; Haughn v. State, (Ind.) 65 N. E. 287.

Indictment number four seeks to charge respondent with the
crime of assenting to the receipt of deposits with knowledge of
the insolvency of the Meade County Bank, of which he was di-
rector.   Sec. 46 of Chapter 222, Session Laws of 1909, provides
that "a bank shall be deemed insolvent—first, when the actual
cash market value of its assets is insufficient to pay its liabilities;
second, when it is unable to meet the demands of its creditors in
the usual and customary manner; third, when it shall fail to make
good its reserve as required by law."   Prior to the enactment of
this law, this Court had defined the term "insolvency" to "mean a
present inability to pay depositors as banks usually do and meet
all liabilities as they become due in the ordinary course of busi-
ness."   State v. Stevens, 16 S. D. 309.   This may be said to be
the common law definition of insolvency applied to banks.   Seven
years subsequent to the above decision, however, our legislature
specifically defined what should be meant by insolvency, and it will
be conceded that the legislative definition of the term is a very
different one than that given by this Court.   It is, in fact, an arti-

ficial and arbitrary definition. Notwithstanding the fact that the term "insolvent," when used in relation to this act, might mean one of three things, it will be observed that the indictment simply uses the indefinite term "insolvent." Whether the bank is claimed to have been insolvent by reason of the fact that the actual cash value of its assets was insufficient to pay its debts, or whether it was unable to meet the demands of its creditors in the usual manner, or whether it had failed to make good its reserve as required by law, is not disclosed by this indictment.

The object of our constitutional provision that "In all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him; to have a copy thereof" and of Section 221, Code Crim. Proc., is well stated in State v. Burchard, supra.

This is clearly a case where it is not sufficient to follow the language of the statute. This is only sufficient when the words of the statute fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished, and must state all the material facts and circumstances embraced in the definition of the offense. 22 Cyc. 340-341.

Indictments eight and four do not state facts sufficient to constitute a public offense in that the sections of the act of 1909 under which the indictments were drawn are unconstitutional.

Upon the question as to the constitutionality of Section 30, Chapter 222, Laws of 1909, respondent has no quarrel with the authorities which are cited by appellant. The general proposition to which defendants brief is almost entirely devoted are sufficiently established by decisions of this Court, the latest of which we do not, however, find in appellant's brief. Pierson v. Company, 134 N. W. 217 (S. D.); Bekker v. R. R., 132 N. W. 800 (S. D.); Kennedy v. Railway, 132 N. W. 802 (S. D.).

Indeed it is upon these propositions that respondent himself relies; but in their application appellant has largely missed the point.

The act of 1909 by its title covers but one subject, and that is "An act to revise the laws;" it is not, however, a revision of all the laws, but by the title of the act the revision is confined to three particulars; (1) "the laws authorizing the business of banking;

(2) providing for the organization and control of banks; and (3) to establish a banking department for the supervision of such business."

The former law "authorizing the business of banking" and also "proving for the organization of banks" of which the act of 1909 is in part a revision, is found in the general incorporation act, Compiled Laws of 1887, Section 2900, and is carried forward in the Revised Civil Code of 1903 as Section 407.

The former law "providing for the organization and control of banks and to establish a banking department for the supervision of such business," of which the act of 1909 is also in part a revision is found in Chapter 79, Laws of 1903 (page 81), which was amended by Chapter 73 of Laws of 1907 (page 77).

This former law of 1903 is entitled "An act to provide a uniform system for the organization and control of banks and defining the duties and powers of the public examiner."

It was therefore for the revision of these two laws, (viz: Laws of 1887, Section 2900, and Chapter 79 of the Laws of 1903, as amended by Chapter 73 of the Laws of 1907), that the act of 1909 now in question was passed.

This act of 1909 does not purport to create any new laws; it is in terms a revision only of the old laws relating to (1) the authorization of the business of banking; (2) the organization and control of banks, and (3) )the establishment of a banking department.

The new portion of Section 29 of Chapter 222, Laws 1909, which is added thereby to the old laws of 1903, and under which indictment number eight is framed, is therefore unconstitutional because it is a revision embodying radically new legislation which has nothing whatever to do with the "control" of banks through the state banking department or otherwise; but goes far beyond and into the domain of the "regulation" of the banking business.

It is conceded that it was perfectly competent for the legislature to enact penalties fitted to effectuate such control, and as to such penalties the title of the act gave notice both to the legislators and to the public. But when the act went further and undertook to create a penal offense entirely distinct from the control of banks as that phrase had theretofore been used both by the legislature and by the people, it might as well have attempted

in the same act to make it a crime to buy post-dated commercial paper.

When therefore the legislature passed the act of 1909 to revise the laws· * * * providing for the organization and control of banks and establishing a banking department for the supervision of the banking business, what would the title naturally indicate to the legislators and to the public, assuming as we must that they were familiar both with the former laws and with the restricted meaning of the word control? It would indicate that certain provisions theretofore in existence with reference to the conduct and supervision of that business by the state were to be revised, changed, modified, added to; that appropriate penal provisions might be included. But it would not indicate that new and independent crimes were to be created entirely separate and distinct from any supervision to be exercised by the banking department, and not in any manner tending to effectuate such supervision. The latter provisions would be for the "regulation" or the "government" of the banking business, but would not be for its "control," as that word is commonly used, any more than any other criminal legislation, whether found in the banking act or the general penal code, would be for the "control" of such institutions.'

Now, referring to the offense sought to be charged in indictment number four, it should be observed that there is absolutely nothing in the laws of which the Act of 1909 purports to be a revision defining or creating any such offense. The only act referring to the reception of deposits by an insolvent bank was the criminal statute, Sec. 679, Penal Code. This was passed in 1879, was codified as a criminal law by the compilers of the Compiled Laws as Section 6850, and when the laws were again revised and codified in 1903, it was again codified as a criminal law and embodied in the revision of 1903 as Section 679 of the Penal Code. This penal statute was revised and ingrafted into the banking laws without any intimation in the title that such was being done. Again, until the enactment of 1909, at least since 1902 when the case of State v. Stevens was determined by this Court, the term "insolvent" when used in connection with a charge of unlawful banking had a well-defined meaning. Without the slightest intimation in the title of the Act of 1909, the meaning of this term

was radically changed and the term was given an artificial and arbitrary definition.

While many of the authorities found in appellant's brief will be found in the brief of the attorney general in State v. Leavitt, yet there are omitted from the present brief a very long list of authorities which, if we thought the question an open one in this state, we should be very glad to present to the Court. We shall content ourselves by citing the following, found in that very excellent brief: Brooks v. Hydron, (Mich.) 42 N. W. 1122; Cahill v. Hogan, (N. Y.) 73 N. E. 39; Christmas v. Warfield, (Md.) 66 Atl. 491; State v. Clark, (Wash.) 86 Pac. 1067; Katz v. Herrick, (Wash.) 86 Pac. 873; Croxton v. Truesdell, (S. C.) 56 S. W. 45; Leach v. People, (Ill.) 12 N. E. 726; Commonwealth v. Samuel, (Pa.) 29 Atl. 909; N. Y. v. Mt. Clair, 47 N. J. Equity, 591; Faulkner v. Doreland, 54 N. J. Equity, 409; People v. Commonwealth, 53 Barb. 70; Webster v. Wowell, (Fla.) 18 Southern, 441; Johnson v. Spicer, 107 N. Y. 185; N. W. Co. v. Chambers, (Mich.) 25 N. W. 372; People v. Allen, 42 N. Y. 404.

Accessories before the fact must be indicted as principals. Code Crim. Proc., Sec. 240; State v. Phillips, 5 S. D. 481; State v. Hessian, (Ia.) 12 N. W. 77; State v. Blevin, (N. Y.) 19 N. E. 638; Ussellton v. People, (Ill.) 36 N. E. 952, at 954; People v. VanBever, (Ill.) 93 N. E. 725, at 727.

McCOY, P. J.   In this case defendants were jointly indicted by a grand jury of Meade county charged with the offense of allowing and permitting shareholders of a bank to become indebted thereto at one time in excess of 50 per cent. of the paid-up capital stock of such bank, contrary to the provisions of sections 29 and 30 of chapter 222, Laws of 1909, and which indictment in substance was as follows: "The grand jurors of the state of South Dakota, within and for the county of Meade, Eighth judicial circuit, duly and legally impaneled, charged, and sworn according to law, in the name of and by the authority of the state of South Dakota, upon their oaths present: That Donald A. McPherson, Henry O. Anderson, Henry E. Perkins, Charles Francis, and Frank M. Stewart, late of said county, Yoemen, on the 1st day of January, in the year of our Lord one thousand nine hundred and ten, at and in the county of Meade, and state of South Dakota, aforesaid, within the jurisdiction of this court, then and

there being, were then and there officers, respectively, of the Meade County Bank of Sturgis, a banking corporation, duly organized, existing and authorized to transact a banking business under and by virtue of the laws of the state of South Dakota, that is to say, Donald A. McPherson at the time and place aforesaid was then and there president and director of said bank aforesaid, and the said Henry O. Anderson was then and there at the time and place aforesaid vice president and director of said bank aforesaid, and the said Henry E. Perkins, at the time and place aforesaid, was then and there cashier of the said bank aforesaid, and the said Charles Francis was then and there at the time and place aforesaid a director of said bank aforesaid, and the said Frank M. Stewart, at the time and place aforesaid, was then and there a director of said bank aforesaid, and which said bank aforesaid was then and there transacting a banking business at Sturgis, in the said county and state aforesaid, and did then and there willfully, unlawfully, knowingly, and feloniously permit and allow Donald A. McPherson, Samue G. Sheffield, Henry E. Perkins, Frank M. Stewart, and Samuel G. Sheffield and Frank M. Stewart, co-partners as Sheffield & Stewart, who were then and there shareholders of and in the Meade County Bank of Sturgis, a banking corporation, as aforesaid, to at one time, that is to say, on Saturday, the 1st day of January, A. D. 1910, to become indebted to the Meade County Bank of Sturgis, a banking corporation, as aforesaid, in the sum of fifty thousand and eight hundred forty-nine and 50-100 ($50,849.50) dollars in the manner following: That is to say, that in the county and state aforesaid, at the time and place aforesaid, the said Donald A. McPherson was then and there permitted and allowed to become indebted to the said bank aforesaid in the sum of five thousand, nine hundred forty-nine and 50-100 ($5,949.50) dollars, and the said Samuel G. Sheffield, at the time and place aforesaid, was then and there permitted and allowed to become indebted to the said bank aforesaid, in the sum of ten thousand, seven hundred ($10,700) dollars, and the said Henry E. Perkins, at the time and place aforesaid, was then and there permitted and allowed to become indebted to the bank aforesaid in the sum of twelve hundred ($1,200) dollars, and the said Frank M. Stewart, at the time and place aforesaid, was then and there permitted and allowed to

become indebted to the said bank aforesaid in the sum of fifteen thousand, five hundred ($15,500) dollars, and the said Frank M. Stewart and the said Samuel G. Sheffield, copartners as Sheffield & Stewart, were then and there permitted and allowed at the time and place aforesaid to become indebted to the said bank aforesaid in the sum of five thousand ($5,000) dollars, all of which sums aforesaid, were, as aforesaid, permitted and allowed to be borrowed by the said officers aforesaid, then and there at the time and place aforesaid, being a total sum exceeding fifty (50) per cent. of the paid-up capital of the Meade County Bank of Sturgis, a banking corporation, as aforesaid, which said bank aforesaid then and there at the time of said indebtedness aforesaid then and there had a paid-up capital of fifty thousand ($50,000) dollars, all of which said indebtedness aforesaid was not then and there discount of bills of exchange drawn in good faith against actually existing values, and was not then and there the discount of commercial paper actually owned by the shareholders aforesaid, and said shareholders were not then and there negotiating the same, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of South Dakota." To which indictment the defendant Frank M. Stewart interposed a separate demurrer upon the following grounds: "(1) That said indictment does not substantially conform to the requirements of the Code of Criminal Procedure for the state of South Dakota, in that it does not contain a statement of the facts constituting the alleged offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. The said indictment is not direct and certain as to the offense charged, nor the particular circumstances of the offense charged, though the particular circumstances thereof are necessary to constitute a complete offense, and said indictment is indirect and incomplete in such regard. (2) That more than one offense is charged in said indictment. (3) That the facts stated in said indictment do not constitute a public offense." The court sustained the demurrer, and, omitting recitals, caused to be entered the following order and final judgment: "It is ordered and adjudged that said demurrer be and the same hereby is sustained, and it is ordered that said defendant be and hereby is dismissed and discharged of the said indictment." To

the said ruling of the court and the entry of judgment sustaining said demurrer the state duly excepted, and now, on appeal, specifies, and urges such ruling and judgment as error.

It is asserted by appellant in the brief that the trial court sustained the said demurrer on the sole ground that chapter 222, Laws of 1909, is unconstitutional and void, and in conflict with section 21, art. 3, State Constitution. We are of the opinion that the record does not show upon what grounds the demurrer was sustained. We are also of the opinion that none of the grounds of demurrer to said indictment are well taken; but that said indictment sufficiently charges a public offense under sections 29 and 30 . of said chapter 222.

[1] It is the contention of respondent that the title of the legislative act (chapter 222, Laws of 1909) is in conflict with section 21, art. 3, State Constitution, in that such title is not sufficiently broad in its terms to cover or include the provisions of sections 29 and 30 of said act. Section 21, art. 3, provides that no law shall embrace more' than one subject, which shall be expressed in its title. The specific contention is that the subject of criminal enactment in relation to the banking business is not included within the title of said act. The title of chapter 222 is as follows: "An act to revise the laws authorizing the business of banking, provide for the organization and control of banks, and to establish a banking department for the supervision of such business." It is conceded by respondent that if the title to this act had been general, such as "an act to regulate the business of banking," it would have been sufficient to carry the penal provisions of said sections, but, inasmuch as the title is specific in its nature, it is contended that it will not carry such penal provsions, that it was not the legislative intent, as indicated by said title, to create any new penal offenses, but only to revise the old laws already then existing relating to the authorization of the banking business, and to control and supervise banks so authorized by means of a banking department, and not by means of penal enactments. The first clause of the title in question, "to revise the laws authorizing the business of banking," clearly relates to the old laws already existing prior to such enactment; but the second clause, "provide for the organization and control of banks," clearly indicates new legislation on the subject of banking. This

second clause of the title is very general, and has broad scope, and is not qualified in any particular. There is no qualification of the scope of the second clause by the wording or substance of either the first or third clauses of the title. The term, "control of banks," could reasonably mean nothing other than the control of the banking business. The control of banks is nothing more or less than control of the banking business. The sole and only subject embraced in the said act is the "business of banking," and which provides for the organization, control, and supervision of banks, and which subject is clearly expressed in the title with more particularity than was really necessary, as to organize, to control, and to supervise are only subdivisions and component parts of the one general subject of banking business. "To regulate" and "to control" in the sense in which the term "to control" is used in the title of the act in question are synonymous or interchangeable terms. 34 Cyc. 1029; 9 Cyc. 811; Bryne v. Drain, 127 Cal. 663, 60 Pac. 433; 2 Words & Phrases, 1549; 7 Words & Phrases, 6041; Webster's Dictionary (1911 Ed.). "To control," as defined in the foregoing authorities, means to check or restrain. To control a business does not necessarily imply that such business is unlawful, but that in some particulars it should be checked or restrained within specified limits. What better method of controlling—that is, checking and restraining loans made unlawfully to officers and shareholders of banks—for the protection of depositors could be made than by prohibiting such loans by penal enactment? We are of the opinion that the provisions of said sections are very appropriate and clearly within the scope and meaning of that part of the title of said act to "provide for the organization and control of banks." The title of an act fairly expressing the general subject covers provisions thereof for all proper means and instrumentalities which may or will facilitate the accomplishment or enforcement of the purpose expressed, such, for instance, as a provision prohibiting violations of the act, or prescribing a penalty or other punishment for such violation. 26 Am. & Eng. Ency. 588; State v. Morgan, 2 S. D. 32, 48 N. W. 314; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121; State v. Children's Home. 10 N. D. 493, 88 N. W. 273.

[2] It is also contended by respondent that the indictment is bad for duplicity, in that more than one offense is charged therein. It will be observed that it is alleged that the defendants Mc-Pherson, Anderson, Perkins, Francis, and Stewart are directors of the Meade County Bank of Sturgis, a banking corporation, and that said defendants did willfully, unlawfully, knowingly, and feloniously permit and allow the said McPherson, Perkins, Stewart, and one Sheffield and Sheffield & Stewart, shareholders of said bank, to at one time—that is to say, on Saturday, the 1st day of January, 1910—to become indebted to said bank in the sum of $50,849.50 in the manner following: Said McPherson became so indebted in the sum of $5,949.50; said Sheffield in the sum of $10,700; said Perkins in the sum of $1,200; said Stewart in the sum of $15,500; and said Sheffield & Stewart in the sum of $5,000; and, being a total sum in excess of 50 per cent. of the paid-up capital of said bank, the paid-up capital of said bank then being $50,000. If the allegation had been that said loans were made at different times, then there would be some force in respondent's contention, as all loans made for amount under the prohibited per cent. would not constitute an offense, and each separate loan might then stand on its own particular circumstances; but, when the allegation is that the whole amount so taken out by these defendants was at one time, it necessarily follows that they were all present at one and the same time, and that it was in fact one joint transaction. It is not necessary to charge and expressly allege an act to be the joint act of a number of defendants joined in one indictment, or to allege that they acted in concert by the use of the words "joint" and "concerted" where the facts and circumstances alleged necessarily show the act to have been the joint act of all the defendants. State v. Lehman, 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670; Loggins v. State, 32 Tex. Cr. R. 358, 24 S. W. 408; Richards v. State, 76 Miss. 268, 24 S. W. 536; Plain v. State, 60 Ga. 284; State v. Johnson, 37 Minn. 493, 35 N. W. 373; Whorton, Crim. Pl. & Pr.; 10 Ency. Pl. & Pr. 554; 22 Cyc. 358-383. If these defendants, as alleged in the indictment, at one time on Saturday, January 1, 1910, wrongfully permitted said loan to be made to shareholders, mostly themselves, in excess of 50 per cent. of the capital stock of said bank, it necessarily follows as a logical

sequence that it was the one joint act and transaction of all and all acted together; in other words, they permitted one another as officers and shareholders of said bank to at one time by means of said loans to abstract from said bank a sum in excess of the entire capital stock of said bank. Under these circumstances, each and every one could not help but know what each and every one did, and the wrongful act of each was the wrongful act of all, and the wrongful act of all was the wrongful act of each. It was an inseparable transaction, and such that it made all principal participators in permitting the loan in excess of the prohibited percentage. Section 30 of said chapter 222 provides as follows: "Any officer, director or employee of any corporation transacting a banking business in this state, who shall knowingly permit or allow shareholders of such bank to at any one time become indebted to such corporation in a total sum exceeding fifty per cent. of the paid-up capital of such banking corporation, as covered by section 29, shall be deemed guilty of a felony. * * *"

[3, 4] We are of the opinion that the indictment states a public offense under said section 29 and 30, and that the said indictment substantially conforms to the requirements of the Code of Criminal Procedure, in that it contains a statement of the acts constituting said offense substantially in the language of the statute, and which is in such ordinary and concise language as to enable a person of common understanding to know what is intended thereby.

The judgment and order appealed from are reversed, and the cause remanded to the circuit court for further proceedings in accordance with this decision.

CORSON, J., dissents.